# Baylor *v.* Stevens.

*Negligence—Pleading—Statement.*

In an action to recover damages for injuries caused by the alleged negligence of the defendant, the defendant cannot complain of the statement, where the trial develops the fact that he was prepared to meet all the allegations of the plaintiff, and the statement furnished him with the information which it was necessary for him to have of the ground upon which the plaintiff sought to recover, in order to prepare for and properly present his defense.

*Negligence—Setting fire to timber—Conflicting testimony.*

In an action to recover damages for the burning of timber alleged to have been caused by defendant's negligence, the case is for the jury, where it appears that the defendant burnt logs and brush on his own land, and that two days thereafter fire was discovered in plaintiff's timber adjoining defendant's land, and the evidence as to the origin of the fire, as to the condition of the piles of refuse on defendant's land, the direction of the wind, the precautions taken by defendant, and all other material questions is unusually contradictory in character.

*Negligence—Burning timber land—Measure of damages.*

In an action to recover damages for the alleged negligent burning of timber belonging to plaintiff, the measure of damages is the difference between the market value of the land with the timber upon it growing, before and after the fire.

*Negligence—Damages—Incompetent witnesses—Expert.*

In an action to recover damages for the alleged negligent burning of timber, a witness who was not acquainted with the land for several years prior to the fire, is not competent to testify as to the market value of the lands immediately before and after the fire.

Argued. Jan. 17, 1901.   Appeal, No. 36, Jan. T., 1901, by defendant, from judgment of C. P. Lackawanna Co., May T., 1899, No. 565, on verdict for plaintiff, in case of William Baylor v. L. G. Stevens.   Before RICE, P. J., BEAVER, OR-LADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Trespass for the alleged negligent burning of timber.   Before ALBRIGHT, P. J., specially presiding.

Plaintiff's statement was as follows:

William Baylor, the plaintiff, is the owner of a certain mes-suage and lot of land situate in the township of Benton, in the county of Lackawanna, and partly in the township of Nicholson, in the county of Wyoming, being a tract of land containing about 600 acres, be the same more or less.   Upon the said tract of land heretofore, to wit: on May 1, 1897, there was a large quantity of growing timber comprising nearly. the whole of the said tract of land.   The defendant, Loren G. Stevens, was the owner of a certain tract of land in the township of Nicholson, in the county of Wyoming, which was bounded upon and ad-joining the said tract of land of the said plaintiff.   On or about May 1, 1897, the said Loren G. Stevens, the defendant, unlaw-fully, negligently and carelessly set fire to certain logs and tim-ber upon his said tract of land adjoining the said tract of land of the said plaintiff as aforesaid, causing the same to catch fire and to communicate with the growing timber upon the said lands of the defendant, which said fire spread to such extent that it communicated with and burned the timber being then and there upon the said lands of the said plaintiff, William Baylor, de-stroying and burning up the said timber of the said plaintiff over an area of about 200 acres of his said tract of land, part of which was situate in the said county of Wyoming, and part of which was situate in the said county of Lackawanna, thereby injuring and damaging the said lands of the plaintiff and causing a loss to the said plaintff of the value of said timber, to wit: a loss in the sum of $10,000, wherefore the plaintiff brings this suit to recover his damages so sustained on account of the careless, negligent and unlawful firing of his timber lands, by the de-fendant aforesaid.

At the trial J. H. Rought was asked this question:

" Q. What was the fair market value of the land in question

that was burned over in 1884, what was the fair market value of those lands, say in the fall of 1894? "

Mr. Soper: We object to that because he has not shown himself sufficiently acquainted with the whole tract.

The Court: The objection is sustained. Exception. [5]

The evidence showed that the witness had no acquaintance with the land for several years prior to the fire.

Defendant presented these points:

1. Under the pleadings and evidence in this case the verdict must be for the defendant. *Answer:* This is negatived. The question of the defendant's liability is submitted to the jury. [1]

4. There is no evidence in the case to show that there was negligence in the setting of the fire in the fallow by the employees of the defendant. *Answer:* There was no negligence in the act of starting or making the fire. Whether necessary precautions against a spreading beyond the fallow and on to plaintiff's land were taken is referred to the jury. Thus explained the point is affirmed. [2]

11. The defendant in this case is not responsible for the result of a sudden shifting of the wind, and, therefore, if the jury should find that the fire spread to the plaintiff's land by reason of a sudden shifting of the wind which blew the fire with great force to the plaintiff's land and thereby caused the injury to the plaintiff, then the inference of the defendant's negligence cannot be drawn, and the verdict should be for the defendant. *Answer:* The court declines to affirm all that is here stated. What is here set forth is referred to the jury to be considered in determining whether it is proved that defendant was negligent. [3]

Plaintiff's points were as follows:

5. Should the jury conclude to find in favor of the plaintiff, the measure of damages is the difference between the market value of the land with the timber upon it growing, before and after the fire. *Answer:* This is affirmed. [4]

1. Fire being a dangerous element, a degree of care was required by the defendant when he made use of it corresponding to the danger, evidenced by the appearance of danger upon the fallow and surrounding the same. In making use of it the defendant was required to do it at a proper time and place and in a suitable manner, and use reasonable care and diligence to prevent its spreading and doing injury to the plaintiff. *An-*

*swer :* It cannot be affirmed that the fire was set at an improper time or place. Thus explained the point is affirmed. [7]

2. If the jury should find that at the time the defendant fired his fallow, the weather was dry ; that a wind was blowing in such a manner or from such a direction that the fire might communicate to the property of the plaintiff ; that there was surrounding the fallow in question dry and combustible material liable to take fire from the burning, and that from Saturday night until Sunday afternoon the defendant nor his servants were in charge of the fire, and by want of this the fire escaped, spread and passed beyond the defendant's control, the injury resulted to the plaintiff, then the jury have the right to impute negligence to the defendant in the premises. *Answer :* This is affirmed. [8]

The court charged in part as follows :

[Was it the duty of Stevens or his men to take precautions against the fire escaping that they did not take ? Was it their duty to guard against its running beyond the boundaries it was intended to keep within ? Ought there to have been something done in the way of clearing a strip around or putting it in such a condition that fire would not have run across, or was it obligatory on Stevens and his men to guard, keep an eye on it, and if it threatened to escape, and escaped, to put it out before it had run far or done harm ? When it was left if there was fire there still, and I believe the defendant claims that you can find that there was no fire there when the workmen left, if there was fire there, was it negligent for them to go away and not keep a guard or an eye on it? Unless it is shown that there was negligence in the care of the fire and keeping it within boundaries, unless it is shown that the defendant did something or omitted to do something that was a fault, did something which he ought not to have done as a prudent man, or omitted to have done something which he ought to have done as a prudent man, if that is not made out by Baylor, then he has not convicted the defendant of negligence even if the fire did run from the clearing on to Baylor's woodland. [9]

Verdict and judgment for plaintiff for $800. Defendant appealed.

*Errors assigned* among others were (1–5) rulings on evi-

dence, quoting the bill of exceptions; (1–4, 7–9) above instructions, quoting them.

*E. C. Newcomb* and *A. A. Vosburg*, with them *Charles W. Dawson*, for appellant.—The statement was insufficient: Good v. Mylin, 8 Pa. 51; Emmens v. Gebhart, 7 Pa. C. C. R. 522, Dovaston v. Payne, 2 H. Blackstone, 527; Stephens & Condit Transportation Co. v. Central R. R. Co., 33 N. J. Law Rep. 229.

It is difficult to see in what respect Mr. Stevens was negligent in the control of the fire. That negligence must be affirmatively shown was decided in Phila. & Reading R. R. Co. v. Yeiser, 8 Pa. 374. Setting a fire in dry time and doing nothing to prevent its spread was held not to create a liability: McGibbon v. Baxter, 51 Hun, 587; Stuart v. Hawley, 22 Barb. 619; Case v. Hobart, 25 Wis. 654; Needham v. King, 95 Mich. 303; Bachelder v. Heagan, 18 Me. 32; Sturgis v. Robbins, 62 Me. 289.

The spreading of a fire lawfully set raises no presumption of negligence: Carton v. Nichols, 81 Mo. 80; Fahn v. Reichart, 8 Wis. 105; Penna. R. Co. v. Whitlock, 99 Ind. 16; Hood v. Hood, 2 Grant Cases, 229; Tenbrooke v. Jahke, 77 Pa. 392; Stuart v. Hawley, 22 Barb. 619; Clark v. Foot, 8 Johns. 421; Calkins v. Barger, 44 Barb. 424; Phila. & Reading R. R. Co. v. Yeiser, 8 Pa. 364; Phila. Baltimore, etc., R. R. Co. v. Layer, 112 Pa. 414.

It has been expressly ruled that where a sudden change and increase of the wind caused fire to escape from a fire pit and go upon the property of another, causing damage, there was no liability: Polzen v. Morse, 91 Mich. 208.

*C. H. Soper* and *Joseph O'Brien*, with them *W. W. Baylor*, for appellee.—No defect of pleading which could have been raised on demurrer will be held fatal to the judgment if it be not shown to have injuriously affected the trial on its merits: Erie City Iron Works v. Barber, 118 Pa. 6; Quick v. Miller, 103 Pa. 67; Twp. of East Union v. Comrey, 100 Pa. 367; Kellam v. Kellam, 94 Pa. 229; Pass. Conductors' Life Ins. Co. v. Birnbaum, 116 Pa. 572; Erie City Iron Works v. Barber, 118 Pa. 19; Brown v. Gilmore, 92 Pa. 47; Trainor v. Phila. & Reading R. R. Co., 137 Pa. 148; Chapin v. Cambria Iron Co., 145

Pa. 478; Hager v. Donaldson, 154 Pa. 242; Kroegher v. Mc-
Conway, etc., Co., 149 Pa. 444; Eckert v. Schoch, 155 Pa. 530;
Com. v. Press Co., 156 Pa. 516; Reed v. Pedan, 8 S. & R. 263;
Morgan v. Farmers' Bank, 3 P. & W. 391; Camp v. Bank of
Owego, 10 Watts, 130.

The gist of the action is negligence, and if it exists by reason
of setting fire not at a proper time or in a suitable manner, or
there is want of reasonable care and diligence to prevent its
spreading, and an injury is done in consequence thereof, the
liability attaches, and it is immaterial whether the proof estab-
lishes gross negligence or only want of ordinary care on the
part of the defendant: Hewey v. Nourse, 54 Me. 256; Barn-
ard v. Poor, 38 Mass. 378; Bachelder v. Heagan, 18 Me. 32;
Tourtellot v. Rosebrook, 52 Mass. 462; Cooley on Torts, 590;
Garrett v. Freeman, 5 Jones (N. C.), 322; Hanlon v. Ingram,
3 Iowa, 81; Higgins v. Dewey, 107 Mass. 494; Jacobs v. An-
drews, 4 Iowa, 506; Dewey v. Leonard, 14 Minn. 153; Catron
v. Nichols, 81 Mo. 80; 2 Shearman & Redfield on Negligence,
sec. 668; Clark v. Foot, 8 Johns. (N. Y.) 421; Krippner v.
Biebl, 28 Minn. 139.

When the thing which causes the injury is shown to be under
the management of the defendant, and the accident is such as
does not happen if those who have the management use the
proper care, it affords reasonable evidence in the absence of
explanation by the defendant that the accident arose from want
of care.    It is a question for the jury: Yeager v. Cassidy, 12
Pa. Superior Ct. 232; Shafer v. Lacock, 168 Pa. 497; Lack-
awanna & Bloomsburg R. R. Co. v. Doak, 52 Pa. 379; West
Chester & Phila. R. R. Co. v. McElwee, 67 Pa. 311; McKee
v. Bidwell, 74 Pa. 318; McCully v. Clark, 40 Pa. 399; Mc-
Guire v. Grant, 25 N. J. L. 356; Gilmore v. Driscoll, 122
Mass. 199; Wallace v. Goodhall, 18 N. H. 439; Dwight v.
Elmira, Cortland & Northern R. R. Co., 132 N. Y. 199.

In actions for injury to real property where the injury is
done to the realty itself, the measure of damages is the dif-
ference in the value of the land before and after the trespass:
Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279.

OPINION BY BEAVER, J., February 14, 1901:

The defendant, in preparing a lot of cleared land for agri-

cultural purposes, caused the refuse timber and brush to be gathered together in heaps and fired.   The fires so kindled were watched and supervised by his employees, who left them on Friday evening, supposing that they were in such a condition as would not endanger the adjoining timber lands.   On the Sunday following, about two o'clock in the afternoon, fire was discovered in the defendant's timber land adjoining the clearing.   The plaintiff alleged that this fire communicated to his timber land adjoining that of the defendant and burned over a tract of 200 or 250 acres, destroying to a great extent the growing timber and injuriously affecting the value of his property.   He brought suit in trespass against the defendant, and in his statement alleged " that the defendant unlawfully, negligently and carelessly set fire to certain logs and timber upon said tract of land adjoining the said tract of land of the said plaintiff as aforesaid, causing the same to catch fire and to communicate with the growing timber upon the said lands of the defendant, which said fire spread to such extent that it communicated with and burned the timber being then and there upon the said lands of the said plaintiff."

The defendant, at the close of the plaintiff's testimony, asked for a nonsuit, and, at the close of the trial, asked for the affirmation of a point, " that, under the pleadings and evidence in this case, the verdict must be for the defendant."   This was refused, the question of the defendant's liability being submitted to the jury.

1. The court, therefore, held the statement sufficient, which, it is strenuously argued, was error.   As we understand the plaintiff's contention, he does not deny the right of the defendant to fire the piles of refuse logs and brush upon his cleared land, but insists that these fires were so carelessly managed that the fire from them communicated to the defendant's own standing timber in the immediate vicinity, and that the fire so communicated spread in such a way as to reach the lands of the plaintiff and destroy their value as timber lands.   This is in substantial accord with the statement, the material part of which we have quoted above.   Whether the negligence consisted in kindling the fire originally, or in " causing the same to catch fire and communicate with the growing timber upon the lands of the defendant," which in turn communicated with the timber

upon the lands of the plaintiff, the statement supports the charge. It is certainly concise, if not as specific as it might be. The trial developed the fact that the defendant was prepared to meet all the allegations of the plaintiff. The statement evidently, therefore, furnished him with the information which it was necessary for him to have, of the ground upon which the plaintiff sought to recover, in order to prepare for and properly present his defense, and this is one of the principal functions of a statement.

2. Was it the duty of the court to hold, as matter of law, that there was no evidence of negligence on the part of the defendant? The fires in the clearing were left from Friday until Sunday, without any supervision or oversight. In view of Bush's testimony on cross-examination (appendix to appellant's paper-book, page 55), that fire " did break out in the side of the woods two or three times during the week ; " was this negligence ? Did they communicate fire to the defendant's standing timber? The defendant and an employee on Sunday, after the fire was discovered, went upon his own land and endeavored to fight, as he expresses it, the fire. Did he go promptly ? Did he do all that was necessary to be done in subduing the fire upon his own land ? Did he notify plaintiff of the danger? If not, was it his duty to do so ? These were questions which the defendant could not ask the court below to rule as matters of law. The testimony in regard to the origin of the fire in the standing timber, and as to the condition of the piles of refuse in the clearing, was unusually contradictory. It was not the duty of the court to reconcile this testimony, or to pass upon the credibility of witnesses. If the plaintiff's testimony was true, a northwest wind blowing at the time materially aided in the spread of the fire. Admitting, as the defendant contends, that he was not responsible for the wind, was it the exclusive cause of the firing of the plaintiff's timber lands? The court could not say so as a matter of law. Every material disputed question—and every material question was disputed—was necessarily for the jury, and the evidence of both plaintiff and defendant was of such a character as to carry them to the jury.

3. Was there error in the manner in which they were submitted? In the general charge in what is assigned for error in the ninth specification the court says : " Was it the duty of Stev-

ens or his men to take precautions against the fire escaping that they did not take? Was it their duty to guard against its running beyond the boundaries it was intended to be kept within? Ought there to have been something done in the way of clearing a strip around or putting it in such a condition that fire would not have run across, or was it obligatory on Stevens and his men to guard—keep an eye on it—and, if it threatened to escape and escaped, to put it out, before it had run far or done harm? When it was left, if there was fire there still—and I believe the defendant claims that you can find that there was no fire there when the workmen left—if there was fire there, was it negligent for them to go away and not keep a guard or an eye on it? Unless it is shown that there was negligence in the care of the fire and keeping it within boundaries, unless it is shown that the defendant did something or omitted to do something that was a fault, or something which he ought not to have done as a prudent man or omitted to have done something which he ought to have done as a prudent man—if that is not made out by Baylor, then he has not convicted the defendant of negligence, even if the fire did run from the clearing onto Baylor's woodland." This general instruction, together with that complained of in the sixth specification of error and the answers to the plaintiff's points, as contained in the seventh, eighth and tenth specifications of error, combined, constitute a fair and comprehensive presentation of the case to the jury. They could be considered erroneous only upon the theory that there was no evidence of negligence to be submitted to the jury.

4. The defendant's fourth specification of error relates to the answer of the court to the plaintiff's point for charge in regard to the measure of damages. This was a case in which the "before and after" rule peculiarly applied. Some of the young growing timber was entirely destroyed, and as timber had no value whatever. Its value was largely prospective, and yet its growth for years had given it an actual value which it was very difficult to measure by any fixed standard. The timber of larger growth, even after the fire, doubtless had some value for immediate cutting, but its preparation for market under the circumstances might have involved as much of expenditure as it was worth. Any mode of calculating the damages other than that adopted would have been complicated, uncertain, unreliable

and unsatisfactory. We do not understand that this specification of error is relied upon by defendant. It is not pressed in the argument. It is not sustained.

5. The witness Rought was not competent to testify as to the market value of the lands at the time immediately before and after the fire. He had not been acquainted with them for several years prior to the fire, was not qualified—even according to his own view—to give an opinion as to their value and, notwithstanding the efforts of the court to help him out, did not show such a knowledge either of the land burned over or of similar land in the neighborhood as to bring him within the rule. His testimony was properly excluded.

The case throughout was fairly and laboriously tried. Great latitude as to time was given to both sides in the presentation of their case. The points for charge presented by both sides were fairly answered—sometimes with necessary qualifications —and the general instructions were full, unbiased and adequate. The remarks of the court complained of as to the manner in which the fire in the clearing might have been circumscribed were based upon general experience and merely suggestive, and were not calculated to influence the jury as to the main question in the case submitted for their finding—that of negligence on the part of the defendant. We have carefully read the testimony throughout and, upon a consideration of the whole case, can find nothing which will warrant reversal.

Judgment affirmed.